UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BW FLEET MANAGEMENT PTE LTD ET AL. | CIVIL ACTION |
| VERSUS | NO. 23-2492<br>C/W: 23-2867 |
| TUG JUSTICE ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 41)** filed by Defendant and Counterclaim Plaintiff Kirby Inland Marine, LP. Plaintiffs, BW Fleet Management Pte Ltd, Hafnia Pools Pte Ltd, and BW Aldrich Pte Ltd (hereinafter collectively "Hafnia Interests" or "Plaintiffs"), opposed the motion (Rec. Doc. 44), and Defendant Kirby Inland Marine, LP filed a reply memorandum (Rec. Doc. 45). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that genuine disputes as to material facts exist, and therefore, the motion for summary judgment should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of a fueling ("bunkering") operation between the parties that resulted in an oil spill in the Mississippi River. Plaintiffs in this matter are BW Fleet Management Pte Ltd, the operator/manager of the vessel that was receiving the fuel, the M/T HAFNIA RHINE; Hafnia Pools Pte Ltd, the bareboat charterer of the M/T HAFNIA RHINE; and BW Aldrich Pte Ltd, the owner of the M/T

1

HAFNIA RHINE. Defendant Kirby Inland Marine, LP ("Kirby") is the owner and operator of the tugboat JUSTICE and the bunker barge PBL 3010 that was supplying the fuel to the M/T HAFNIA RHINE on July 28, 2022, when the fuel overflowed and spilled into the river.

Prior to the bunkering operation, the parties entered into a pre-bunkering agreement whereby they determined the amount of very low sulfur fuel oil ("VLSFO") to be transferred—700 metric tons—and the rate at which the transfer would take place throughout the process. Defendant Kirby concedes that the tankerman aboard the bunker barge transferred more fuel than the parties had agreed to, but Kirby also alleges that this breach of the pre-bunkering agreement did not proximately cause the overflow of the receiving vessel's starboard fuel oil tank ("FOT(S)"). Instead, Kirby claims that the M/T HAFNIA RHINE's crew acted with extraordinary negligence such that the crew's conduct was the "superseding and sole proximate cause" of the overflow and subsequent oil spill. (Rec. Doc. 41-1, at 20).

In July of 2023, Plaintiffs, the Hafnia Interests, brought the instant action against Kirby Inland Marine, LP *in personam*, and against the JUSTICE and the PBL 3010 *in rem*, for "damages, clean-up costs, expenses, claims, and reimbursements" associated with the fuel spill. (Rec. Doc. 1, at 1). Plaintiffs asserted a claim for negligence and unseaworthiness under general maritime law, and they also brought a claim under the Oil Pollution Act of 1990. Defendant Kirby filed a counterclaim against the Hafnia Interests alleging that the M/T HAFNIA RHINE's

2

crew's negligence was the proximate cause of the fuel spill and seeking contribution and indemnity for the damages it sustained.[1]

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When evaluating whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008) (citations omitted). The moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. When the moving party meets this burden, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little*, 37 F.3d

---

[1] Additionally, American River Transportation Company, LLC filed a complaint against Kirby and M/T HAFNIA RHINE, *in rem*, for damages it sustained due to the fuel spill. The case was consolidated with the instant suit, although since that time, American River Transportation reached a settlement with Kirby and M/T HAFNIA RHINE and dismissed all claims against these parties.

at 1075 (citing *Celotex*, 477 U.S. at 325). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with "conclusory allegations" or "unsubstantiated assertions." *Id.* (citations omitted). To grant a motion for summary judgment, a court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

The parties in this case agree that general maritime law governs the negligence claim because the alleged tort "occurred on navigable waters and bears a 'significant relationship to a traditional maritime activity.'" (Rec. Doc. 41-1, at 16 (quoting *Creppel v. Shell Oil Co.*, 738 F.2d 699, 701 (5th Cir. 1984)). The Fifth Circuit has explained that the "elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law." *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005) (citations omitted). This means that a plaintiff must establish the following: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach caused the plaintiff's injury. *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (citations omitted). Here, the parties' dispute turns on the issue of proximate cause.

The Hafnia Interests and Kirby entered into a pre-bunkering agreement whereby they determined that Kirby would transfer 700 metric tons ("MT") of VLSFO to the M/T HAFNIA RHINE. Further, the agreement specified that the tankerman

would begin the transfer at a flow rate of 150 m$^3$/hour, increase to a maximum flow rate of 400 m$^3$/hour, slow to a 150 m$^3$/hour rate when the amount of fuel delivered got close to the nominated amount of 700 MT, and complete the transfer with a flow rate of 100m$^3$/hour. Based on this agreement, Kirby had the duty to deliver the correct amount of VLSFO and to abide by the agreed-upon flow rates during the transfer. Additionally, the Person in Charge ("PIC") on the receiving vessel, who was the Chief Engineer, clearly had a duty to ensure that the FOT(S) was prepared for the transfer, meaning primarily that there was enough space in the tank to hold the nominated amount of fuel, and to monitor the transfer from the receiving vessel's end. Therefore, as a matter of law, both parties had duties to act prudently and to comply with the agreement between them, in addition to following their respective company's policies regarding fuel transfer, which is governed by regulations that the United States Coast Guard ("USCG") promulgates and enforces.

Next, the parties do not dispute that there was a breach of the duty, and in fact, in their briefs, both Plaintiffs and Defendant refer to multiple breaches of the duties which resulted in the overflow of the tank and the fuel spill into the Mississippi River. As mentioned above, the dispute centers on the proximate, or legal, cause of the spill. Kirby concedes that the tankerman conducting the transfer aboard the bunker barge transferred 102.79 MT more VLSFO than the Hafnia Interests had agreed to, for a total of 802.79 MT. However, Kirby also relies on the superseding cause doctrine to claim that the "extraordinary negligence" of the receiving vessel's crew was the proximate cause of the overflow and spill.

In *U.S. v. Reliable Transfer Co.*, the Supreme Court held that the comparative fault principle applies to property damages in admiralty cases. 421 U.S. 397, 411 (1975). Later, in *Exxon Co., U.S.A. v. Sofec, Inc.*, the Court clarified this holding and explained that damages should be apportioned "based upon comparative fault only among tortfeasors whose actions were proximate causes of an injury." 517 U.S. 830, 837 (1996). Further, the Court concluded that comparative fault and the superseding cause doctrine were not mutually exclusive. *Id.* The superseding cause doctrine acts to limit a defendant's liability, even "where the defendant's negligence in fact substantially contributed to the plaintiff's injury," when "the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* (quoting Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 5-3 (2d ed. 1994)).

Here, Kirby acknowledges that it was negligent in transferring more VLSFO than the parties had agreed to, but Kirby also claims that the receiving vessel crew's "extraordinary negligence . . . was the superseding and sole proximate cause of the oil spill into the Mississippi River." (Rec. Doc. 41-1, at 20). In its brief, Kirby explains that even with the excess fuel it transferred to the M/T HAFNIA RHINE, the starboard fuel oil tank should not have overflowed. The 802.79 MT of VLSFO that Kirby transferred corresponds to approximately 864.21 $m^3$ of VLSFO by volume, and Kirby alleges that "[i]t is undisputed that 864.21 $m^3$ is less than the 100% capacity (879.6 $m^3$) of the FOT(S) tank." *Id.* at 12. More significantly, Kirby alleges that the Chief Engineer on the M/T HAFNIA RHINE, who was the designated PIC, and the Fourth Engineer, who assisted in monitoring the fuel transfer, violated both Coast

6

Guard regulations and internal company policies when they "completely cease[d] all monitoring of [the] FOT(S) tank." *Id.* at 19.

Kirby claims that Plaintiffs were "statutorily required to monitor the bunkering operation" and that company policy required the Chief Engineer and the Fourth Engineer to call an emergency stop of the transfer (or to request a reduction in flow rate) when the final ullage[2] was reached. *Id.* In sum, Kirby claims that the Chief Engineer/PIC and the Fourth Engineer stopped monitoring the fuel tank on the receiving vessel and failed to notice that the tank's capacity had been reached. Next, because of this negligence, the PIC and Fourth Engineer failed to initiate an emergency stop of the bunkering operations, and this conduct, according to Kirby, was "the later cause of independent origin that was not foreseeable." Kirby urges the Court to apply the superseding cause doctrine and to find that the M/T HAFNIA RHINE crew's negligence, and not its own, was the proximate cause of the oil spill.

Conversely, Plaintiffs argue that Kirby was at least contributorily negligent in causing the fuel spill. According to Plaintiffs, the receiving vessel's crew did not have a duty to direct Kirby's tankerman when to stop the transfer. To support this assertion, Plaintiffs reveal that two fuel transfers took place on the day in question. First, Kirby delivered 270 MT of marine gasoil ("LSMGO"). According to Plaintiffs, the Kirby tankerman completed this transfer without incident and without any instruction from the M/T HAFNIA RHINE'S crew. This fact, they say, undercuts Kirby's argument that the receiving vessel's crew was obligated to call an emergency

---

[2] "Ullage" refers to the remaining empty space in the fuel tank.

stop to the later VLSFO transfer. Furthermore, Plaintiffs claim that any negligence on the crew's part could not be a superseding cause to relieve Kirby of liability. First, Plaintiffs argue that the negligence Kirby attributes to the Chief Engineer and the Fourth Engineer was not a "later" cause because it occurred simultaneously with the tankerman's over-transfer of VLSFO. Further, Plaintiffs contend that any negligence on the part of the vessel's crew cannot constitute a superseding cause because it was also foreseeable.

The Court concludes that determining proximate cause in this case requires resolution of factual issues, and because there are genuine disputes concerning these material facts, the Court finds that summary judgment is not appropriate.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant and Counterclaim Plaintiff Kirby Inland Marine, LP's *Motion for Summary Judgment* **(Rec. Doc. 41)** is **DENIED**.

New Orleans, Louisiana, this 11th day of February, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE